```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
                                       :
BRADLEY W. WENDT and RICK FITZGERALD,  :      16cv7751 (DLC)
                                       :      16cv8091 (DLC)
                 Plaintiffs,           :
                                       :      OPINION AND ORDER
          -v-                          :
                                       :
THE BONDFACTOR COMPANY LLC, BUTCHERMARK:
FINANCIAL ADVISORS LLC, GEORGE BUTCHER,:
WILLIAM JACOBS, TERRY AGRISS, JOHN     :
GIBBS, GARY COURSEY, HONORABLE PETER   :
SHERWOOD, JEFF HUMBER and TONY BOLAND, :
                                       :
                 Defendants.           :
                                       :
---------------------------------------X
```

For the Plaintiffs:
Michael Cassell
Hogan & Cassell, LLP
500 North Broadway, Suite 153
Jericho, New York 11753

For the Defendant George Butcher:
Pro Se George Butcher

For the Defendant Gary Coursey:
Kenneth C. Murphy
Bradley D. Simon
Simon & Partners LLP
551 Fifth Avenue
New York, New York 10176

For the Defendants William Jacobs, Terry Agriss, John Gibbs, the
Honorable Peter Sherwood, Jeff Humber and Tony Boland:
Brian D. Waller
Thompson Hine LLP
335 Madison Avenue
New York, New York 10017

DENISE COTE, District Judge:

The plaintiffs Bradley Wendt ("Wendt") and Rick Fitzgerald ("Fitzgerald") each assert a single claim of retaliation under the Dodd-Frank Act of 2010, 15 U.S.C. § 78u-6 ("Dodd Frank"), against The BondFactor Company LLC ("BondFactor"), ButcherMark Financial Advisors LLC ("ButcherMark"), six BondFactor Board members (the "Six Directors"), Gary Coursey ("Coursey"), and George Butcher ("Butcher").  For the reasons set forth below, the defendants' motions to dismiss the first amended complaint ("FAC") are granted.

<u>**BACKGROUND**</u>

The following facts are drawn from the FAC and are construed in favor of the plaintiffs.  See <u>Keiler v. Harlequin Enters. Ltd.</u>, 751 F.3d 64, 68 (2d Cir. 2014).  On March 2, 2010, Wendt and the defendant Butcher co-founded BondFactor.  BondFactor's primary objective was to commercialize seven patents for the bond insurance industry.  Butcher was appointed Chairman and Chief Executive Officer ("CEO"), while Wendt was appointed President.

On May 2, 2011, Fitzgerald entered into an employment agreement with BondFactor.  On May 9, 2013, he was appointed Managing Director of Capital Markets, and later went on to become Chief of Capital Markets at BondFactor.

In September 2012, plaintiff Wendt requested that
BondFactor's general counsel, the law firm of Winston & Strawn
LLP, research federal securities laws regarding finder's fees.
In late October 2013, Wendt and Fitzgerald began to suspect that
Butcher was engaging in inappropriate and/or illegal activities.
While the FAC recites a litany of inappropriate activities, only
two of these alleged activities are relevant to the present
motion.

First, the plaintiffs believed that Butcher was improperly
expending BondFactor's investor funds.  Second, the plaintiffs
believed that Butcher had made a "possible" decision to direct
BondFactor to pay finder's fees to an unlicensed individual who
was acting as a broker-dealer.  After notifying BondFactor's
chief risk officer of their concerns, the two plaintiffs and the
risk officer (collectively, the "Whistleblowers") opted to
notify William Jacobs, who was Chairman of BondFactor's Finance
Committee and Risk Subcommittee, and a member of the Audit
Committee, of their suspicions.  Jacobs recommended that the
Whistleblowers communicate their concerns directly to Butcher.

On October 21 and 22, the Whistleblowers met with Butcher
to discuss his potentially illegal conduct.  Shortly thereafter,
Wendt called Jacobs to report on his conversation with Butcher.
Jacobs allegedly reassured Wendt that "from a compliance

3

perspective and in his fiduciary capacity as president of BondFactor," Wendt had "correctly escalated his whistleblower duties."

Also in October, Fitzgerald informed John Gibbs -- another BondFactor Board member -- of his suspicions regarding the potential payment of a finder's fee to the unlicensed broker-dealer. Fitzgerald advised Gibbs that he and Wendt had been in communication with BondFactor's general counsel regarding federal securities laws as they relate to finder's fees. Fitzgerald further advised Gibbs that the broker-dealer was not a registered representative with the Securities and Exchange Commission ("SEC").

During an executive committee session of a November 12, 2013 Board meeting, the BondFactor Board voted to terminate the plaintiffs' employment. On November 15, the plaintiffs were advised of this decision.

## PROCEDURAL HISTORY

On February 10, 2014, the plaintiffs submitted a Demand for Arbitration (the "Demand") to the American Arbitration Association ("AAA"). The Demand asserted fifteen claims for relief against BondFactor, ButcherMark, and Butcher (collectively, the "Arbitration Respondents"). Wendt and Fitzgerald each asserted improper deductions and retaliation

4

under New York Labor Law ("NYLL"); breach of contract; fraud in
the inducement; quantum meruit; tortious interference; and a
joint claim seeking a declaratory judgment that Butcher,
BondFactor and ButcherMark were alter egos of each other.
Fitzgerald also asserted an unpaid wages claim under the Fair
Labor Standards Act ("FLSA") and an unpaid wages claim under
NYLL.  An arbitration was held over the course of five days in
November 2014.  The arbitrator issued a Partial Final Award on
February 10, 2015, dismissing each claim except for Fitzgerald's
unpaid wages claim under NYLL, Fitzgerald's breach of contract
claim for payment of unreimbursed expenses, and attorneys' fees
and costs for Fitzgerald pursuant to 28 U.S.C. § 216(b).  The
Final Award entered on May 13, 2015 awarded Fitzgerald's
attorneys' fees and costs.

Fitzgerald did not file a petition to vacate or modify to
the Partial Final Award or the Final Award.  On some unspecified
date, however, Wendt filed a petition to vacate or modify the
arbitration award pursuant to Article 75, N.Y. C.P.L.R.  See
N.Y. C.P.L.R. § 7511.  On May 10, 2016, the Honorable Joseph
Farneti of the Supreme Court of Suffolk County largely denied
Wendt's petition to vacate the arbitration decision (the
"Suffolk County Order").  The court found, however, that the
arbitrator's denial of Wendt's breach of contract claim violated

5

New York's public policy against the forfeiture of wages earned by an employee but not yet paid.  The matter was referred back to AAA for a new determination of Wendt's earned, accrued, and vested compensation (reduced by payments made to him), as well as attorneys' fees and costs.  BondFactor filed an appeal of the Suffolk County Order with the Appellate Division, Second Department, on December 16, 2016.  The appeal remained pending as of May 2017.  Wendt did not appeal those portions of the Suffolk County Order that denied his motion to vacate or modify the arbitration award.

Meanwhile, on February 23, 2016, Wendt and Fitzgerald jointly sent a "Form TCR" (Tip, Complaint, Referral) to the SEC regarding Butcher's alleged securities law violations.  On October 4, Wendt filed the complaint in this action under seal (the "Wendt Action").  Attached to the complaint was the plaintiffs' Form TCR.  A conference was held on October 7 to address why Wendt's complaint had been filed under seal.[1]  At the conference, Wendt was instructed to publicly file a redacted version of the complaint by October 11, and to file the TCR as a

---

[1] During the conference, it was revealed that Wendt's counsel had mistakenly represented to the Clerk of Court that this action was a False Claims Act qui tam action and that it should therefore be filed under seal.

redacted exhibit.

On October 17, Fitzgerald filed a complaint asserting a violation of Dodd-Frank's whistleblower provision (the "Fitzgerald Action").  On December 21, the Fitzgerald Action was reassigned to this Court as related to the Wendt Action.

On January 24, 2017, defendant Coursey filed motions to dismiss in the Wendt and Fitzgerald Actions pursuant to Rule 12(b)(6), Fed. R. Civ. P.  On January 26, pro se defendant Butcher filed Rule 12(b)(6) motions to dismiss in the Wendt and Fitzgerald Actions.[2]  On February 3, the Six Directors filed Rule 12(b)(6) motions to dismiss in the Wendt and Fitzgerald Actions.  On February 3, the Wendt and Fitzgerald Actions were consolidated.

By Order dated February 21, the plaintiffs were given until March 10 to file an amended complaint and were instructed that it would likely be their final opportunity to amend.  The FAC was filed on March 9.  By Order dated March 10, the defendants'

---

[2] Butcher also filed a motion pursuant to Rule 24, Fed. R. Civ. P., to intervene on behalf of the corporate defendants BondFactor and ButcherMark.  This motion was denied on February 21 because Butcher is not a licensed attorney and therefore may not represent corporate entities.  See Lattanzio v. COMTA, 481 F.3d 137, 139 (2d Cir. 2007) ("[A] layperson may not represent a separate legal entity such as a corporation.").  To date, no attorney has entered an appearance on behalf of BondFactor or ButcherMark.

January 24, January 26, and February 3 motions to dismiss were denied as moot.[3]  On March 22, <u>pro se</u> defendant Butcher filed a renewed motion to dismiss.  Coursey filed a renewed motion to dismiss on March 30, while the Six Independent Directors filed a renewed motion to dismiss on March 31.  BondFactor and ButcherMark did not file a motion to dismiss or an answer to the FAC.  The motions to dismiss became fully submitted on May 17.

### DISCUSSION

When deciding a motion to dismiss, a court must "accept all allegations as true and draw all inferences in the non-moving party's favor."  <u>LaFaro v. New York Cardiothoracic Grp., PLLC</u>, 570 F.3d 471, 475 (2d Cir. 2009) (citation omitted).  "To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts which, taken as true, state a plausible claim for relief."  <u>Keiler</u>, 751 F.3d at 68; <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) ("[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (citation omitted)).  A claim has facial plausibility when "the factual content" of the complaint "allows the court to draw the reasonable inference

---

[3] The March 10 Order mistakenly states that the Six Directors filed a motion to dismiss on March 3.  The Six Directors' motion to dismiss was filed on February 3.

8

that the defendant is liable for the misconduct alleged."
Tongue v. Sanofi, 816 F.3d 199, 209 (2d Cir. 2016) (citation
omitted).  "Where a complaint pleads facts that are merely
consistent with a defendant's liability, it stops short of the
line between possibility and plausibility of entitlement to
relief."  Iqbal, 556 U.S. at 678 (citation omitted).  In sum, "a
plaintiff's obligation to provide the grounds of his entitlement
to relief requires more than labels and conclusions, and a
formulaic recitation of the elements of a cause of action will
not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)
(citation omitted).

In deciding a motion to dismiss, the court considers "any
written instrument attached to the complaint as an exhibit or
any statements or documents incorporated in it by reference."
Stratte-McClure v. Morgan Stanley, 776 F.3d 94, 100 (2d Cir.
2015) (citation omitted).  The court may also consider
"documents upon which the complaint relies and which are
integral to the complaint." Subaru Distribs. Corp. v. Subaru of
Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005).  Finally, on a
motion to dismiss, a court may consider "matters of which
judicial notice may be taken, and documents either in
plaintiffs' possession or of which plaintiffs had knowledge and
relied on in bringing suit."  Kalyanaram v. Am. Ass'n of Univ.

9

Professors at N.Y. Inst. of Tech., Inc., 742 F.3d 42, 44 n.1 (2d
Cir. 2014) (citation omitted).

The Partial Final Award, the Final Award, the Suffolk
County Order, the plaintiffs' employment agreements, excerpts
from the transcript of the arbitration, and Wendt's post-
arbitration hearing brief were attached to defendant Coursey's
motion to dismiss.  The plaintiffs do not object to the Court's
consideration of these documents.  In fact, the FAC itself
relies on the record of arbitration and facts reflected in the
transcript of the arbitration proceedings.  Accordingly, such
documents may properly be considered in resolving the present
motion.

The defendants' motions to dismiss principally argue that
the plaintiffs' Dodd-Frank retaliation claims are barred under
the doctrine of res judicata.  "A court may consider a res
judicata defense on a Rule 12(b)(6) motion to dismiss when the
court's inquiry is limited to the plaintiff's complaint,
documents attached or incorporated therein, and materials
appropriate for judicial notice."  TechnoMarine SA v. Giftports,
Inc., 758 F.3d 493, 498 (2d Cir. 2014).

"The term res judicata . . . encompasses two significantly
different doctrines: claim preclusion and issue preclusion."
Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc., 779

10

F.3d 102, 107 (2d Cir. 2015).  With a single exception, the
defendants assert only claim preclusion.[4]

Under the doctrine of claim preclusion, "a final judgment
on the merits of an action precludes the parties or their
privies from relitigating issues that were or could have been
raised in that action."  Brown Media Corp. v. K&L Gates, LLP,
854 F.3d 150, 157 (2d Cir. 2017) (citation omitted).  To
establish claim preclusion, a party must show that:

> (1) the previous action involved an adjudication on
> the merits; (2) the previous action involved the
> parties or those in privity with them; and (3) the
> claims asserted in the subsequent action were, or
> could have been, raised in the prior action.

Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V., 809
F.3d 737, 745 (2d Cir. 2016) (citation omitted).

The parties do not dispute that an arbitral award may be
given preclusive effect.  See Pike v. Freeman, 266 F.3d 78, 90
(2d Cir. 2001).  While it is an open question whether federal or
state law governs a federal court's determination of the
preclusive effect of an arbitral award, see id. at 90 n.14, the

---

[4] Butcher individually asserts issue preclusion with respect to
the arbitrator's finding that he resisted, rather than prompted,
the termination of Wendt's employment.  Because Wendt's
retaliation claim against Butcher is dismissed on other grounds,
Butcher's issue preclusion affirmative defense need not be
addressed.

parties here appear to agree that New York law governs.[5]  In any event, the Second Circuit has recognized that there is "no discernible difference between federal and New York law concerning res judicata and collateral estoppel."  Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002). Accordingly, both New York and federal law are cited in this discussion.

## I.   Final Adjudication on the Merits

Under New York law, an arbitral award has preclusive effect only when there has been a "final adjudication on the merits." Postlewaite v. McGraw-Hill, 333 F.3d 42, 48 (2d Cir. 2003).  An arbitral award is final when: (1) the award has been confirmed, (b) vacatur has been denied on the merits, or (c) the time to appeal has expired.  See Jacobson v. Fireman's Fund Ins. Co., 111 F.3d 261, 268 (2d Cir. 1997).

The parties do not dispute that the Partial Final Award and

---

[5]    In opposition to this motion, the plaintiffs assert that the preclusive effect of the parties' previous arbitration is an issue that should be resolved by referring the matter back to the arbitrator.  They are wrong.
    The plaintiffs cite to Citigroup Global Markets, Inc. v. Preis, No. 14cv8487 (LGS), 2015 WL 1782135 (S.D.N.Y. Apr. 14, 2015), in support of this argument.  Citigroup is inapposite. Citigroup addressed a motion to enjoin a second arbitration proceeding.  The issue was whether the court or the arbitrator in the successive arbitration proceeding should decide the preclusive effect of a previous federal judgment confirming the first arbitration award.  Id. at *4.

the Final Award constitute final adjudications on the merits with respect to Fitzgerald.  With respect to Wendt, however, a footnote in the plaintiffs' opposition brief notes that there has "arguably" been no adjudication on the merits "because the issue as to the amounts of wages owed to [Wendt] is still outstanding."

As described above, the Suffolk County Order largely denied Wendt's petition to vacate the arbitrator's award, vacating only the arbitrator's interpretation of Wendt's contract extension as a waiver of certain compensation.  The matter was referred back to AAA "for a new determination as to the amount of petitioner's earned, accrued and vested compensation reduced by payments made to him, and, as the now prevailing party, attorneys' fees and costs . . . ."  The Suffolk County Order did not disturb the arbitrator's findings with respect to any other substantive claims, including retaliation under NYLL: "[I]t also cannot be said that petitioner's termination was based upon retaliation."  While BondFactor has appealed the Suffolk County Order, Wendt has not.  Therefore, litigation over the retaliation claim has concluded.  That a collateral issue requiring only a calculation of the amount of wages owed to Wendt remains open does not impact the finality of the arbitrator's adjudication of the

balance of Wendt's arbitration claims.[6]

## II.  Privity

New York courts "have found that the concept of privity requires a flexible analysis of the facts and circumstances of the actual relationship between the party and nonparty in the prior litigation."  Syncora Guarantee Inc. v. J.P. Morgan Sec. LLC, 970 N.Y.S.2d 526, 530 (1st Dep't 2013) (citation omitted). It is a "functional inquiry in which the formalities of legal relationships provide clues but not solutions." Chase Manhattan Bank, N.A. v. Celotex Corp., 56 F.3d 343, 346 (2d Cir. 1995) (applying New York law).  Thus, the doctrine of res judicata "may bar non-parties to earlier litigation not only when there was a formal arrangement for representation in, or actual control of, the earlier action but also when the interests involved in the prior litigation are virtually identical to those in later litigation."  Id. at 345.

The plaintiffs argue that Coursey and the Six Directors  -- all members of BondFactor's Board of Directors -- may not invoke res judicata because they were not parties to the arbitration proceeding.  This argument fails.  The individual directors'

---

[6] It is unnecessary in these circumstances to stay the dismissal of Wendt's federal lawsuit until the adjudication of the compensation claim has concluded.

interests were aligned with BondFactor's interests during the arbitration proceeding.  During the arbitration proceeding, BondFactor vigorously defended itself against claims that, among other things, it had retaliated against the plaintiffs in violation of the NYLL.  Furthermore, the individual directors were acting in their official capacities when they voted to terminate the plaintiffs' employment at the executive committee session of the November 12, 2013 Board meeting.  In sum, the plaintiffs were not denied a full and fair opportunity to litigate their claims before the arbitrator simply because members of the Board of Directors who voted, and thereby caused BondFactor, to terminate the plaintiffs' employment were not parties to the arbitration.

## III. Claims Actually Litigated or Claims that Could Have Been Litigated

As stated above, the doctrine of res judicata "applies not only to claims actually litigated but also to claims that could have been raised in the prior litigation." Nationwide Mut. Ins. Co. v. U.S. Underwriters Ins. Co., 2017 WL 2540557, at *1 (1st Dep't June 13, 2017) (citation omitted).  New York applies a transactional analysis to determine whether res judicata bars a claim.  Id.  Under this analysis, "[o]nce a claim is brought to a final conclusion, all other claims arising out of the same

15

transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." Id. (citation omitted).  Put differently,

> when alternative theories are available to recover what is essentially the same relief for harm arising out of the same or related facts such as would constitute a single factual grouping, the circumstance that the theories involve materially different elements of proof will not justify presenting the claim by two different actions.

UBS Sec. LLC v. Highland Capital Mgmt., L.P., 927 N.Y.S.2d 59, 64 (1st Dep't 2011) (citation omitted).  Whether facts are deemed to constitute a "single factual grouping" for res judicata purposes "depends on how the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."  Id. (citation omitted).

The defendants have not shown that the Dodd-Frank retaliation claims were litigated in the prior arbitration proceeding.[7]  Thus, the only issue is whether the Dodd-Frank

---

[7] The defendants reference several excerpts from the transcript of the arbitration in support of their argument that the Dodd-Frank retaliation claim was previously litigated.  These excerpts reflect attempts by Mr. Wendt to introduce additional facts to support his existing claims, or attempts by Mr. Wendt to show that Mr. Butcher may have violated federal securities law.  The Partial Final Award makes clear that any claim related to potential violations of securities laws was not litigated:

retaliation claims could have been litigated in arbitration.
Contrary to the plaintiffs' assertions, retaliation claims under
Dodd-Frank are arbitrable.  Khazin v. TD Ameritrade Holding
Corp., 773 F.3d 488, 492 (1st Cir. 2014).  The parties also
dispute whether the arbitration provision in the plaintiffs'
employment agreements encompassed Dodd-Frank retaliation claims.

Both of the plaintiffs' employment agreements contain
the following arbitration provision:

> 13.1 Dispute Resolution.  Except as otherwise
> specifically provided in Section 9.7 (relating to the
> ability of a party to seek injunctive or other
> equitable relief from a court), any claim or
> controversy arising out of or relating to this
> Agreement or the breach hereof shall be resolved
> exclusively by arbitration.

Contrary to the plaintiffs' assertion, this is a quintessential
broad arbitration clause.  See Oldroyd v. Elmira Sav. Bank, FSB,
134 F.3d 72, 76 (2d Cir. 1998), abrogated on other grounds by
Katz v. Cellco P'ship, 794 F.3d 341 (2d Cir. 2015) (finding that
the clause requiring arbitration of "[a]ny dispute, controversy
or claim arising under or in connection with" an agreement is a

---

In addition to these legal claims before me, numerous
"sideshows" . . . were invoked by each of the parties,
for example . . . potential securities laws violations
not before me.

"prototypical broad arbitration provision").  If the arbitration
clause was a broad one, "then there is a presumption that the
claims are arbitrable."  Collins & Aikman Prods. Co. v. Bldg.
Sys., Inc., 58 F.3d 16, 20 (2d Cir. 1995) (citation omitted).
Accordingly, the plaintiffs were not barred by their arbitration
agreement from pursuing their Dodd-Frank retaliation claims in
arbitration.

The facts in support of the plaintiffs' Dodd-Frank
retaliation claims are related in time, space, and origin to the
facts alleged in the Demand and adjudicated during the
arbitration.  In fact, the October 2013 "intervention" between
the Whistleblowers and Butcher, which constitutes the foundation
of the plaintiffs' Dodd-Frank retaliation claims, is described
in connection with the Demand's NYLL retaliation claim.  The
Demand's breach of contract claim describes in further detail
the content of the plaintiffs' discussions with Butcher in
October 2013, including how they confronted Butcher about his
"misuse of the funds of BondFactor and its investors by, among
other things, using such funds to pay for his personal
expenses," and Butcher's "decision to direct BondFactor to pay
finders' fees to an unlicensed individual acting as a broker-
dealer, thereby exposing BondFactor to a potential violation of
federal and state securities laws."

18

Insofar as the plaintiffs believed that they were wrongfully retaliated against under not just New York law but also federal law for complaining to BondFactor Board members about improper or illegal conduct, they could have pursued these Dodd-Frank retaliation claims in the arbitration.  Accordingly, the plaintiffs' Dodd-Frank retaliation claims are dismissed with prejudice under the doctrine of res judicata.

## CONCLUSION

The defendants' motions to dismiss are granted.  Because none of the plaintiffs' claims survive the motion to dismiss, because the plaintiffs have not moved for entry of default against the corporate defendants, and because the analysis in this Opinion applies equally to the claims brought against BondFactor and ButcherMark, the claims against BondFactor and ButcherMark are also dismissed with prejudice.  The Clerk of Court shall enter judgment for the defendants and close the above-captioned consolidated cases.


Dated:     New York, New York
           August 2, 2017

                              _____
                                      DENISE COTE
                           United States District Judge

Copy mailed to:

George Butcher
310 Oxford Road
New Rochelle, New York 10804